## The Sam Rotan.

*(District Court, S. D. New York. April 21, 1884.)*

**1. Collision—East River—Tug and Tow.**

A tug, with a tow on a hawser, in the East river, is bound to keep out of the way of a schooner close-hauled.

**2. Same—Case Stated.**

The schooner C. was sailing close-hauled up the East river, below Corlear's Hook, about 200 feet off the New York shore, heading to Grand street, Williamsburgh; and the steam-tug R., having the schooner K. in tow, on a hawser 240 feet long, came down the river from above, and passed between the C. and the New York shore, clearing the C. by about 50 or 75 feet, but the K. and C. came into collision. *Held,* that the tug was in fault for needlessly attempting to pass between the schooner C. and the shore, there being no obstructions toward the middle of the river, where she might have gone, and where the statutes required her to keep.

In Admiralty. Collision.

*Lester W. Clark,* for libelant.

*Goodrich, Deady & Platt,* for the Rotan.

BROWN, J. On the tenth day of December, 1881, the libelant's schooner Commerce was sunk through a collision with the schooner Kirk, in tow of the Rotan, in the East river, about 200 feet off the point of the Corlear's Hook. The Commerce was bound up the East river, the wind being north, and the tide the last of the flood, and slack. She was sailing close-hauled, on her port tack, heading about N. E. by E., and so as to make the Grand-street ferry on the Brooklyn shore, and her course remained unchanged. The Rotan, with the Kirk, a three-masted schooner, in tow upon a hawser about 240 feet long, was bound down the river. The Rotan, with her tow, had passed on the easterly side of the Tenth-street buoy, and came down about the middle of the river; and when she approached the Grand-street ferry had veered to the right, so as to pass Corlear's Hook close to the westerly shore, in accordance with the prevailing practice of boatmen. The captains of the Commerce and Rotan testify that they saw each other when from a quarter to half a mile distant. On the part of the Rotan it is claimed that she could not properly keep to the leeward of the Commerce, but rightly passed to the extreme right-hand side of the river close to the Hook; that the Rotan cleared the Commerce at least 100 feet in passing her; and that the Kirk, which was a little nearer the shore, would also have easily gone clear, had not the Commerce, as claimants' witnesses allege, made a strong sheer to port and run directly into the Kirk nearly at right angles; which, as they allege, was the sole cause of the collision. The libelant denies any such sheer, and alleges that his wheel was put to port so as to go to starboard, and that the Commerce did fall off about half a point, and struck the Kirk a glancing blow on the port side of the Commerce. The captain of the Commerce was at the wheel, and three other men were forward; all of whom were occupied, so that there was no proper lookout. One of the three was killed by the collision; the Commerce sank almost immediately, and her captain was rescued from the masthead.

The case has been tried mainly upon the question whether there was any such luff by the Commerce as the claimants' witnesses testify to. But, in my judgment, that point does not wholly dispose of the liabilities of the respective parties. The defendants have much the greater number of witnesses from the Rotan and the Kirk, who testify to such luffing; the libelant has but two witnesses to contradict it. Notwithstanding the greater number of witnesses who testify to such a luff by general statements, I am not satisfied of the correctness of these witnesses in this particular.

(1) It is in the highest degree improbable. The luff alleged is a luff of about four points. The Commerce, without doubt, was previously heading somewhat inshore, so as to pass the point of the hook and clear it by about 200 feet. A luff of four points would have carried her directly inshore, and would have been without any conceivable reason.

(2) The Commerce was already sailing close upon the wind, and such a luff as alleged would not only have put her in stays, but have

rendered her, so near to the shore at that point, unmanageable. Some of the defendants' witnesses say that her sails were shaking when she struck the Kirk; others say that her sails were full. This disagreement is important; if her sails were full, the wind was such that there could not possibly have been such a luff as alleged.

(3) The luff alleged could not have been accomplished within the space assigned for it. It is not claimed by the defendants that she began to luff until she was abreast of the Rotan. The Kirk was only 240 feet astern of the Rotan, and they were going at from six to eight knots an hour; the Commerce about two to three. The distance between them would, therefore, have been passed over in from 15 to 20 seconds. No luff of any importance could have been accomplished in that time, for the Commerce was heavily loaded and proceeding slowly.

(4) All the witnesses who testified to this luff testify that the collision was a little below the point of the hook; that is, after the Rotan and her tow had rounded the turn to the southward. While they were making this turn, the Commerce, although preserving her own course unchanged, would seem to be coming more quartering upon the Kirk; and the change in the Kirk's own position and heading, I have no doubt, has been largely ascribed, through a natural mistake, to a supposed luff of the Commerce, which would produce the same relative change had the Kirk kept a straight course.

(5) The testimony of the captain of the Garlic, who, being astern of the Commerce, testified to seeing her starboard her wheel, may easily have arisen from the fact that the Commerce used a "traveling wheel," which was in fact turned to starboard, as the master testifies, in order to put the helm to port.

(6) All these various considerations lead me to adhere to the usual rule which gives greater credit to the statements of those on board a vessel, as to her own movements and maneuvers, than to the testimony of those on other vessels in motion.

The Kirk had her sails set; and it would seem that the captain of the Commerce did not observe the hawser of the Rotan, and supposed that the Kirk was coming down by herself and not in tow. But this does not affect the improbability of his making such a luff as to run into her. At the time the luff is alleged to have been made, the Kirk was clearly nearer the shore than the Commerce. Rejecting, therefore, the theory of the Commerce's luffing as the cause of the collision, it seems clear to me, from the other testimony, that both were in fault.

1. The Rotan was bound by statute to keep as near as may be to the middle of the river. She did so, in this case, until she neared Corlear's Hook, when she drew rapidly over to the northerly shore in order to get the benefit of the slack water there; and, in doing so, she crossed the course of the Commerce, as the captain of the latter rightly states. It is possible that the Commerce was not observed by the captain of the Rotan until he had already got so far towards the New

York shore that the Commerce was no longer on his starboard bow, as she must have been previously. Whether seen or not, the Commerce might have been seen; and she was navigating according to her legal right. The Rotan, in violating the statute which required her to keep near the middle of the river,—where there were in fact no obstructions,—and in hugging the New York shore at Corlear's Hook and attempting to pass inside of the Commerce in a space not over a couple of hundred feet wide, necessarily did so at her own risk of being held responsible in case of accident. Had there been plenty of room to pass inside safely, and had the accident been caused solely by an unjustifiable change of course by the Commerce, the Rotan would not have been held liable for this violation of the statute. *The Maryland,* 19 FED. REP. 551, 556. But I am not satisfied that there was such abundant space, or that the collision was brought about by such a luff as alleged. Nor is the fact that the Rotan herself passed clear, sufficient evidence that there was room for the Kirk, which was in tow on a hawser, to pass safely also. The Rotan passed the Commerce at a distance variously estimated at from 50 to 100 feet only; but the course of the Commerce was then headed about a point and a half towards the shore; and, in my judgment, it was the keeping of her previous course, and not any luff, which brought her in contact with the Kirk before the latter got past. The nearness of the Commerce to the shore, and her course somewhat headed towards it, made the experiment of the Rotan, in passing inside of her, clearly hazardous and injustifiable. There was nothing in the way to prevent the Rotan's passing along the middle of the river, where the law required her to go; and the Rotan must therefore be held in fault.

2. The Commerce, on the other hand, cannot be acquitted of blame. She had no proper lookout, because the men forward were busily engaged in other work. The captain at the wheel could not see properly. He did observe, as he testifies, that the Rotan was crossing his bows to go inside of him. Had a proper lookout been kept, it would have been seen that the Kirk was in tow of the Rotan; and when the Rotan, with such a tow, was going inside under such circumstances, it was the duty of the Commerce at once to port her wheel in order to avoid the evident danger of collision which the faulty maneuver of the Rotan involved. Had the wheel been ported in time, when this course of the Rotan and her tow should and would have been seen by a proper lookout, I cannot doubt that the collision would have been avoided. The captain ported, but too late, because there was no lookout to observe the Kirk in time. The fault of the Rotan in going inside does not relieve the Commerce in this respect. *The Maria Martin,* 12 Wall. 31; *The Pegasus,* 19 FED. REP. 46; *The B & C,* 18 FED. REP. 543; *The Vim,* 12 FED. REP. 906.

The libelant is entitled to a decree for half his damages, with costs. If the parties do not agree, a reference may be taken to compute the amount.